THE PEOPLE, Plaintiff and Respondent, v. HENRY PAUL ALVARADO, Defendant and Appellant.

Henry Paul Alvarado, in pro. per., and William Henry Daubney, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant was convicted of violation of Penal Code, section 261, subdivision 3, and section 209, in that he forcibly raped Mary Chutnicut and kidnapped her for the purpose of robbery and caused her bodily harm. He was also charged with and admitted a prior felony conviction for assault by means of force likely to produce great bodily injury. He was found guilty of both counts charged and the jury fixed his punishment at life imprisonment in a state prison without possibility of parole.

The evidence shows that on June 11, 1962, about 1 a.m., Mrs. Chutnicut was driving home from Cox's Café, a drinking and dancing establishment in San Luis Rey. Alvarado, who had seen her at the café, followed her in his car and caused her to stop her car by blinking the headlights on his car. She thought that it was her sister-in-law in her car, trying to convey a message to her. Then Alvarado kidnapped Mrs. Chutnicut, took her purse with money in it, and forcibly raped her. We will omit the gory details related. Some time later, as she was walking along Santa Fe Avenue to obtain help, she came across some sheriff's officers and described the defendant and his automobile. The description was very accurate and defendant was picked up a few hours later. Mrs. Chutnicut later picked defendant out of a police line-up. There was considerable evidence at the scene and other circumstantial evidence which fully corroborated Mrs. Chutnicut's story and pointed undoubtedly to the defendant as the guilty person.

The defendant's story was that he left Cox's Café on the night in question and went straight home. He said that he got the scratches which, according to the story of the prosecutrix, were inflicted by her on his person, in a fight two nights before. Blood, allegedly from the prosecutrix, was found on his trousers. Defendant's mother corroborated his story that he was at home at that hour and his brother said that he had been in a fight. Two other people also testified that they saw defendant in a fight at the time he claimed to have been scratched up.

On defendant's cross-examination, the following questions were put to him:

"Q. Well, actually the only fight that you had this weekend was that with Mary Chutnicut, wasn't it,

to force her into having intercourse with you?

"A. No sir.

"Q. Isn't it a fact, though, that to get intercourse that you felt you had to use force on this woman?

"A. To tell the truth, sir, I never was with that woman.

"Q. Didn't you use force on a woman to have intercourse with her?

"A. No, sir, I never have.

"Q. You say you never have?

"A. No, sir. I never been with a woman that way, to force anyone."

Then the prosecutor asked:

"Well now, isn't it a fact that in 1957 you crawled into the house of two women with an iron bar and beat both of them for the purposes of rape?"

Defendant denied this. Thereafter, the prosecutor cross-examined defendant extensively as to the details of the 1957 incident. Defendant admitted going into the room at night and beating both women with an iron bar, but claimed that it was because of some argument they had had with his brother. He denied any intention to commit rape. This evidence was admitted over the objections of defendant's counsel but was subsequently stricken.

At a later time, as a rebuttal witness, the prosecution called Edith Hedley, one of the women involved in the 1957 incident and she testified that defendant, wearing a mask, had broken into her house and beaten her and a Mrs. Taylor during the night when they were clad in their gowns or robes; that he had an iron bar and that they were knocked unconscious. However, they testified that neither of them was raped while conscious and that nothing had been taken from their home. Defendant's counsel then moved that the testimony of Mrs. Hedley be stricken from the record and that the cross-examination of defendant as to the 1957 incident should be stricken from the record. The court struck this evidence from the record and duly admonished the jury to disregard it. Also in rebuttal, the People called a Mrs. Bishop who testified that defendant struck her several times and raped her by force in 1961. Defendant admitted the occasion but denied the force.

Defendant now contends that the court erred in permitting the details of his 1957 attack against Mrs. Hedley and Mrs. Taylor to be brought in evidence, and further that his case

was prejudiced thereby even though all evidence on the 1957 incident was stricken and the jury was instructed to disregard it.

The Attorney General contends that defendant opened the door to evidence showing that on the prior occasion he beat the two women after entering their bedroom under circumstances from which it could be inferred that he intended to rape them. The prosecution also contends that if there was error, the error was removed by the court's action in later striking the evidence from the record and admonishing the jury to disregard it, and also if there was error the evidence supporting defendant's conviction is so strong that the error was not prejudicial. No complaint is made as to admission of the testimony of Mrs. Bishop.

It might well appear that the prosecutor did fairly believe that the witness Mrs. Hedley would testify as to the force that was used against her and that it was her belief that defendant intended rape by force. The circumstances presented might well have led to this belief. (*People* v. *Wojahn*, 169 Cal.App.2d 135, 147 [337 P.2d 192].) ■ However, the trial court believed that the evidence was insufficient to constitute proper impeachment of defendant on the subject and accordingly rejected it. The court admonished the jury to disregard it and we assume the jury followed the instruction. (*People* v. *Rosoto*, 58 Cal.2d 304, 352 [23 Cal.Rptr. 779, 373 P.2d 867].) ■ The defendant raised no objections to the admission of the testimony of Mrs. Bishop, by way of impeachment. The direct evidence of defendant's identity by the prosecutrix and the testimony and circumstances showing guilt were so overwhelmingly established that we do not believe, from an examination of the entire record, that the verdict of the jury would have been otherwise had this testimony not been produced. *(People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.

A petition for a rehearing was denied October 1, 1963, and appellant's petition for a hearing by the Supreme Court was denied November 6, 1963.